**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| GULF ENGINEERING COMPANY, LLC. | CIVIL ACTION |
| VERSUS | 15-441-SDD-EWD |
| THE DOW CHEMICAL COMPANY | |

<u>**RULING**</u>

This matter is before the Court on the *Motion for Partial Summary Judgment on Breach of Contract and Detrimental Reliance Claims*[1] filed by the Defendant, The Dow Chemical Company ("Dow"). Plaintiff, Gulf Engineering Company, LLC. ("Gulf"), has filed an *Opposition*[2] to this motion, to which Dow has filed a *Reply*.[3] For the following reasons, the motion will be DENIED.

**I.    FACTUAL BACKGROUND**

Gulf filed this lawsuit alleging breach of contract, detrimental reliance, and intentional interference with a business relationship.[4] The Court previously dismissed the intentional inference claim on Dow's Rule 12(b)(6) motion.[5] Gulf alleges that it and Dow entered into an "Agreement for Services" ("Agreement"), effective from April 1, 2014 to September 30, 2018.[6] Gulf was engaged by Dow in the "the business of inspecting,

---

[1] Rec. Doc. 58.
[2] Rec. Doc. 66.
[3] Rec. Doc. 78.
[4] Dow is domiciled and incorporated in the state of Delaware and conducts business within the state of Louisiana. Gulf is a Louisiana limited liability corporation. *See* Rec. Doc. 1. Given that the amount in controversy exceeds $75,000, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 over the case at bar.
[5] Rec. Doc. No. 46.
[6] Rec. Doc. 1, ¶¶ 6, 10.
47365

verifying, tracking, and non-destructively testing industrial process piping, valves, environmental protection equipment, tanks, drums, metals, and other equipment at various DOW facilities.[7] Gulf had been engaged by Dow to perform "these services for Dow for several years, prior to being awarded an additional four-year contract renewal."[8] Gulf claims that Allison Kuhn ("Kuhn"), an employee of Dow, began "micro-managing" how Gulf employees interacted with Dow employees and dictated the manner in which Gulf employees performed their work.[9]

On September 10, 2014, Kuhn allegedly informed the Gulf employees that Gulf "would no longer continue their employment, that she was retaining a new contractor to replace Gulf, and that the assembled employees would have to immediately begin employment with that new company in order to continue working at [Dow]."[10] Five days later, on September 15, 2014, Gulf received a letter from Troy Barbier ("Barbier") advising Gulf that Dow was terminating its relationship with Gulf pursuant to Article 3.1 of the Agreement.[11] The September 15 letter from Dow stated that the Agreement would be terminated on December 9, 2014, ninety days after the written notice was sent.[12] Gulf alleges that, despite the 90 days termination notice, Kuhn immediately ordered Gulf personnel to vacate the Dow premises, which resulted in Gulf "discontinu[ing] its work under [the agreement], forfeit[ing] its future revenues thereunder, separate under duress

---

[7] Rec. Doc. 1 ¶ 8.
[8] Rec. Doc. 1 ¶ 9.
[9] Rec. Doc. 1, ¶ 25.
[10] Rec. Doc. 1, ¶ 30.
[11] *Id.*, ¶ 32.
[12] *Id.*
47365

from over 100 employees, and entirely dissolv[ing] the non-destructive testing division of Gulf's business."[13]

Dow moves for summary judgment arguing that the language of the contract is clear and unambiguous, and Dow had no obligation under the terms of the contract to use Gulf's services at all, much less during the 90 day notice period. Dow claims that all work performed by Dow was required to have preauthorization in writing, and Gulf has failed to present any summary judgment evidence that it was continuing to perform such work during the notice period. Thus, Dow maintains that it is entitled to summary judgment as a matter of law.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[15] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[16] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence

---

[13] Rec. Doc. 38, p. 9, ¶ 38.
[14] Fed. R. Civ. P. 56(a).
[15] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[16] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
47365

of a genuine issue concerning every essential component of its case.'"[17] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[18]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[19] All reasonable factual inferences are drawn in favor of the nonmoving party.[20] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[21] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[22]

### B. Louisiana Contract Law[23]

"Interpretation of a contract is the determination of the common intent of the

---

[17] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[18] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[19] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[20] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[21] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[22] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[23] The Court is sitting in diversity in the present matter and will apply the law of the State of Louisiana to Gulf's breach of contract, detrimental reliance, and intentional interference with a business relationship claims because these claims raise questions of substantive law. "Under '*Erie* doctrine' federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed. 2d. 659 (1996).
47365

parties."[24]  "The language of the [contract] is the starting point for determining that common intent."[25]  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[26]  "The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter."[27]  "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract."[28]  "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."[29]

"Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[30]  "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."[31]  "Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another. Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation."[32]

---

[24] La. Civ. Code art. 2045.
[25] *Angus Chem. Co. v. Glendora Plantation, Inc.*, 782 F.3d 175, 180 (5th Cir. 2015) (quoting S*ix Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)).
[26] La. Civ. Code art. 2046.
[27] La. Civ. Code art. 2047.
[28] La. Civ. Code art. 2048.
[29] La. Civ. Code art. 2049.
[30] La. Civ. Code art. 2050.
[31] La. Civ. Code art. 2053.
[32] La. Civ. Code art. 2055.

"The determination of whether a contract is clear or ambiguous is a question of law. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate."[33] "[O]nly when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment."[34] "The Court may consider extrinsic evidence as to the parties' intent only if the contract is ambiguous."[35] Louisiana state and federal courts hold that "[i]ntent is an issue of fact which is to be inferred from all the surrounding circumstances.[36] One of the best ways to determine what the parties intended in a contract is to examine the method in which the contract is performed, particularly if performance has been consistent for many years."[37]

### C. Arguments and Analysis

Dow acknowledges that the Agreement requires either party to provide 90 days' notice before terminating the Agreement without cause. Dow contends that, because it is not obligated to utilize Gulf's services at any time, including during the 90-day termination period, Dow cannot be in breach of the contract.

Section 1.1 of the Agreement provides that, "[a]s requested by Dow from time to

---

[33] *Angus Chem. Co.*, 782 F.3d at 180 (quoting *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 590 (La. 2007)).
[34] *Amoco Prod. Co. v. Texas Meridian Res. Expl. Inc.*, 180 F.3d 664, 669 (5th Cir. 1999).
[35] *Thorne v. Bard Peripheral Vascular, Inc.*, No. 16-0262, 2016 WL 3746148, at *4 (E.D. La. July 13, 2016) (citing *Campbell v. Melton*, 817 So. 2d 69, 75 (La. 2002)).
[36] *WH Holdings, LLC v. ACE American Ins. Co.*, 2013 WL 2286107 *3 (E.D.La. May 23, 2013)(citing *Total Minatome Corp. v. Union Tex. Prods. Corp.*, 766 So.2d 685, 689 (La. App. 2d Cir. 1994)(citing *Futch v. Futch*, 643 So.2d 364 (La.App.2d Cir.1994))).
[37] *Id.* (citing *Total Minatome*, 766 So.2d at 689 (citing *Spohrer v. Spohrer*, 610 So.2d 849 (La.App. 1 Cir.1992)).
47365

time during the term of this Agreement,"[38] Gulf is required to perform the services requested in an appropriate manner. Further, Section 6.1 provides that "No Contractor Personnel are to be furnished and no Services are to be performed under the Contract by CONTRACTOR unless specifically authorized in writing by DOW."[39] Article III of the Agreement provides three ways the contract may be terminated by the Parties. It is undisputed that Dow terminated the Agreement pursuant to 3.1(a), which provides: "DOW or CONTRACTOR may terminate this Contract for any reason at any time or for no reason upon at least 90 days advance written notice."

Dow denies Gulf's claim that Kuhn "evicted" Gulf immediately following the notice; however, Dow contends that this disputed fact is immaterial to the determination of its summary judgment motion because Dow was not obligated to continue to utilize Gulf's services after September 15, 2014 or to allow Gulf to remain onsite until December 9, 2014 while not performing work. Dow maintains that this 90 day notice provision serves "two important purposes."[40] First, the provision protects Gulf by allowing Gulf to complete and be paid for all work authorized in writing prior to the termination. Second, the provision protects Dow by ensuring Dow had a contractor at its disposal for at least 90 days in the event that Gulf had terminated the Agreement.[41] The Court finds this to be a reasonable interpretation of the purposes of the 90 day provision. Nevertheless, these purposes are not spelled out in the Agreement, and Gulf's interpretation of the purposes of 90 day notice period is just as reasonable.

---

[38] Rec. Doc. No. 58-3 at 1.
[39] *Id.* at 10.
[40] Rec. Doc. No. 58-2 at 9.
[41] *Id.*
47365

Gulf does not dispute that, under Article 1.1 of the Agreement, any request for work from Gulf was on an "as needed" basis and at the sole discretion of Dow. The clause primarily in dispute is the meaning of "upon at least 90 days advance written notice." Gulf contends Dow's reading of the notice provision renders the provision meaningless and makes this termination provision no different from the termination for cause provision, which is an absurd result. Further, Gulf claims that the services it performed pursuant to the Agreement were ongoing and continuous, not intermittent and sporadic as suggested by Dow. Thus, Gulf claims, the Parties' conduct based on customary practice did not preclude Gulf's working without a specified, written preauthorization prior to every single duty Gulf was to perform. Gulf cites the testimony of Dow personnel to confirm this understanding.

Dow urges the Court not to consider extrinsic evidence in this case because the terms of the contract are clear and unambiguous, and the fact that some of Dow's personnel expected some type of transition during the 90 day period does not change the clear terms of the contract. Further, Dow maintains that, because Gulf has failed to submit any written authorization for work beyond September 15, 2014, Gulf has failed to carry its burden to defeat summary judgment.

Applying the relevant Louisiana Civil Code articles to the facts of this case, the Court finds that the 90 day notice provision is ambiguous and susceptible to differing interpretations as demonstrated by the equally reasonable interpretations offered by both Dow and Gulf. Further, the Court is not convinced that either party strictly complied with the writing preauthorization requirement set forth in Article 6.1. Indeed, the evidence suggests that the Parties did not. The Court agrees that Dow was not required to utilize

Gulf's services in the 90 day notice period **unless** Gulf was engaged in authorized work that had to be completed. However, this is a disputed issue of material fact.

It is undisputed that, during the course of the Parties' relationship, Gulf was "nested" at Dow's St. Charles and Plaquemine facilities. President and co-owner of Gulf Vint Massimini ("Massimini") was asked to describe the process by which work was requested by Dow to Gulf. Massimini testified that "they would give us a heads-up on work that need to be performed, whether it was for upcoming turnarounds or general run and maintain."[42] Massimini further testified that these communications occurred "constantly,"[43] and he agreed that he had a "constant flow of information about the status and nature of the ongoing operations that Gulf was performing for Dow."[44] Massimini was also asked if Gulf was given individual purchase orders for certain work performed, and he testified, "No. It was under the umbrella or the contract."[45]

Dow's St. Charles Maintenance Leader Chad Naquin ("Naquin") confirmed Massimini's understanding of the process by which work was ordered by Dow, testifying that Dow's expectations for Gulf were communicated though conversations that were ongoing between the coordinator and Gulf, and he had no recollection of any formal documentation for these conversations.[46] Naquin confirmed that, in the ongoing conversations, Gulf would be advised how to proceed for the next task's completion pursuant to at least dozens of different inspection plans that could be going on at the

---

[42] Rec. Doc. No. 66-8 at 146, lines 13-16.
[43] *Id.*, line 19.
[44] *Id.* at 147, lines 4-6.
[45] *Id.* at 148, lines 13-14.
[46] Rec. Doc. No. 66-5 at 25.

47365

same time.⁴⁷  Throughout his deposition, Naquin testified regarding the complex procedures related to chain-of-command work planning, task assignment, performance reviews, schedule progressions, and billing, among other things.⁴⁸  Naquin was asked how Dow and Gulf resolved a multitude of issues relating to the work Gulf performed, and Naquin confirmed that the procedures for resolving these issues appeared nowhere in the Agreement.⁴⁹  Even the September 15 termination letter, written by Dow's Sourcing Manager Troy Barbier, acknowledges that Gulf performed work for Dow pursuant to both written and verbal agreements:  "This letter is to serve as written notice of [Dow's] intention to cancel any and all written **and/or verbal agreements** between Dow and Gulf … ."⁵⁰

As set forth above, a doubtful contract provision must be interpreted in light of the nature of the contract, equity, usages, and the **conduct of the parties** before and after the formation of the contract.  Further, Louisiana courts noted that "[o]ne of the best ways to determine what the parties intended in a contract is to examine the **method in which the contract is performed**, particularly if performance has been consistent for many years."⁵¹  The record evidence demonstrates that the writing requirement set forth in Article 6.1 was not treated so rigidly by either party.

As the movant, Dow has the burden of submitting evidence to establish that Gulf was not engaged in pre-authorized work.  It has not carried this burden.  Gulf has presented competent summary judgment evidence that creates a material issue of fact

---

⁴⁷ *Id.* at 26.
⁴⁸ *Id.* at 20-23, 35-36, 47, 62-63.
⁴⁹ *Id.* at 99-101.
⁵⁰ Rec. Doc. No. 66-3 (emphasis added).
⁵¹ *WH Holdings, LLC*, 2013 WL 2286107 at *3 (citations omitted)(emphasis added).
47365

as to whether Gulf still had authorized work to complete during the 90 day notice period. Moreover, the Court must draw all reasonable factual inferences in favor of the nonmoving party – Gulf. Thus, Dow is not entitled to summary judgment on the breach of contract claim or the detrimental reliance claim, for the same reasons.

## III. CONCLUSION

For the above stated reasons, Dow's *Motion for Partial Summary Judgment on Breach of Contract and Detrimental Reliance Claims*[52] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>August 14, 2018</u>.

<u>            /s/ Shelly D. Dick            </u>
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[52] Rec. Doc. 58.

47365

Page 11 of 11