UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GULF ENGINEERING COMPANY, LLC.            CIVIL ACTION

VERSUS            15-441-SDD-EWD

THE DOW CHEMICAL COMPANY

### RULING

This matter is before the Court on the *Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b)*[1] filed by the Defendant, The Dow Chemical Company ("Dow"). Plaintiff, Gulf Engineering Company, LLC. ("Gulf"), has filed an *Opposition*[2] to this motion, to which Dow filed a *Reply*.[3] For the following reasons, Dow's motion shall be denied.

### I. BACKGROUND

This case required a jury's determination whether Dow breached the Agreements for Services it entered into with Gulf, particularly with respect to the issue of whether either party had the ability to terminate the Agreement for any reason, but only upon written notice at least 90 days prior to the intended termination date. Dow moved for summary judgment on Gulf's claims, but the Court denied Dow's motion, finding that an issue of fact remained regarding Gulf's ostensible engagement in pre-authorized work at the time it was allegedly evicted from Dow's premises.[4] This matter proceeded to a jury trial

---

[1] Rec. Doc. No. 153.
[2] Rec. Doc. No. 161.
[3] Rec. Doc. No. 167.
[4] Rec. Doc. No. 84.
Document Number: 51136

beginning on September 9, 2018.[5] Several of Plaintiff's other contractual claims were dismissed by the Court during the course of trial,[6] and the Court granted summary judgment in favor of Dow on its counterclaim.[7] The Court bifurcated the trial and asked the jury to decide, in two separate deliberations, whether Dow breached the Agreement for Services, and if so, what lost profits Gulf proved to a reasonable certainty for the breach. The jury returned a verdict in favor of Gulf, finding that Dow breached the Agreement for Services and caused Gulf to sustain lost profits in the amount of $138,758.00.[8]

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Dow now renews its Rule 50(a) motion, which was raised appropriately before the matter was submitted to the jury. Dow contends that no admissible evidence was offered at trial upon which a reasonable jury could have concluded that Dow breached the Agreement for Services or that Dow caused the lost profits assessed. Gulf opposes this motion, arguing that the trial evidence supported reasonable inferences that Dow breached the Agreement for Services, and the evidence justified the award of damages.

## II. RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW

A Rule 50(b) motion for judgment as a matter of law "in an action tried by a jury, is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[9] Such a motion may be granted only if the trial court finds that "there is no legally sufficient basis

---

[5] Rec. Doc. No. 134.
[6] Rec. Doc. No. 138.
[7] Rec. Doc. No. 146.
[8] Rec. Doc. No. 140.
[9] *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000)).
Document Number: 51136

for a reasonable jury to have found for that party with respect to that issue."[10] In conducting its analysis of a Rule 50(b) motion, the court "consider[s] all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."[11] Considering that all reasonable inferences and credibility determinations must be resolved in favor of the non-moving party, "judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[12] The Fifth Circuit instructs that "[c]ourts should be wary of upsetting jury verdicts, and should do so only when there is not a legally-sufficient evidentiary basis for the jury's verdict."[13]

## III. ARGUMENTS

Based on applicable law and the Court's jury instructions, to establish a breach of contract by Dow, Dow contends Gulf was required to prove by a preponderance of the evidence that Dow authorized Gulf to perform work pursuant to the terms of the Agreement during the notice period and that Dow prevented Gulf from completing the authorized work. Dow contends there was no evidence presented at trial establishing any previously authorized work at the time the separation notice was given on September 15, 2014 that could not have been completed by Gulf. Dow maintains that Gulf did "not produce a single witness or document that even inferred Dow prevented Gulf from

---

[10] *Id.* (quoting *Ford*, 230 F.3d at 830 (internal quotations omitted))(quoting *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5th Cir. 1997)).
[11] *Id.* (quoting *Brown v. Bryan County, OK*, 219 F.3d 450, 456 (5th Cir. 2000)).
[12] *Id.* (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir. 1994)).
[13] *In re Actos (Pioglitazone) Products Liability Litigation*, 2014 WL 4364832, *3 (W.D. La. Sept. 2, 2014) (citing *Roman v. Western Manufacturing*, 691 F.3d 686, 692 (5th Cir. 2012)).
Document Number: 51136

completing previously authorized work."[14] Further, Dow argues that any circumstantial evidence viewed in the light most favorable to Gulf only established that any previously authorized work would have been completed by the week of September 15, 2014.

Dow directs the Court to Gulf owner Vint Massimini's ("Massimini") testimony acknowledging that the Agreement does not contain a provision requiring Dow give Gulf any work at any point, including during the 90-day notice period.[15] Dow also notes that Massimini testified that he had no knowledge of any pre-authorized work for Dow on September 15, 2014;[16] Massimini also had no knowledge or documentation of cancelled work or evidence showing that Dow prevented Gulf from completing any assignments.[17] Massimini also acknowledged that Gulf alone made the decision to terminate its employees the day after Dow issued the notice of termination although 90 days remained on the contract.[18] Dow cites the testimony of Dow employees Allison Kuhn ("Kuhn") and Terry Mackie ("Mackie"), both of whom testified that Gulf was not prevented by Dow from completing any pre-authorized work.[19]

Dow also maintains no evidence was presented at trial to establish Gulf's allegation that Kuhn ordered Gulf to evacuate the property by the Friday of the week of September 15, 2014. Kuhn denied this allegation.[20] The only purported evidence that Kuhn ordered Gulf off the property was the testimony of Massimini; however, Dow notes that the Court allowed this testimony as impeachment testimony of Mackie rather than

---

[14] Rec. Doc. No. 153-1 at 3.
[15] Rec. Doc. No. 153-4 at 14.
[16] Rec. Doc. No. 153-5 at 64.
[17] Rec. Doc. No. 153-4 at 21-22.
[18] Rec. Doc. No. 153-3 at 194.
[19] *Id.* at 11 (Kuhn); Rec. Doc. No. 153-2 at 232 (Mackie).
[20] *Id.* at 7.
Document Number: 51136

evidence that the statement was actually made by Kuhn.[21] Further, Massimini admitted that he did not hear this statement directly from Kuhn; rather, Massimini testified that Mackie told him that Kuhn wanted Gulf out by that Friday.[22]

Dow also contends that, even if Gulf had been evicted on Friday, September 19, 2014, the evidence at trial still failed to establish that Dow prevented Gulf from performing any pre-authorized work. Massimini acknowledged that Gulf could not perform work not authorized by Dow,[23] and both Mackie and Chad Naquin ("Naquin") testified that Gulf could not perform work without written preauthorization from Dow.[24] Dow contends the testimony of Mackie and Naquin confirms that work was only authorized in writing on a day-to-day or week-by-week basis. Thus, Dow argues:

> Vint Massimini's testimony that Dow was authorizing Gulf to perform work on an ongoing basis is consistent with this procedure, as the ongoing authorizations were reduced to writing for each assignment. Accordingly, the trial evidence unambiguously proves work was authorized, in writing, on a daily basis or, at most, a week-by-week basis.[25]

Dow maintains that Gulf's "expectation" of a reasonable transition time during the 90-day period is not evidence of previously authorized work.

With respect to Kuhn's testimony that Gulf actually had work that had already been assigned to it that was incomplete when it left, Dow argues this testimony is not evidence that Gulf had authorized work beyond September 15, 2014. No other witness testified to such a fact nor was any documentation presented to establish this fact; thus, Gulf's interpretation of Kuhn's testimony as Gulf being authorized to continue to perform work

---

[21] *Id.* at 175.
[22] Rec. Doc. No. 153-4 at 23.
[23] *Id.* at 15.
[24] Rec. Doc. No. 153-2 at 228-29 (Mackie); Rec. Doc. No. 153-3 at 19 (Naquin).
[25] Rec. Doc. No. 153-1 at 14.
Document Number: 51136

for the entire 90-day period is not supported by any evidence at trial. Further, Dow notes that Mackie was the only witness asked about work extending beyond the week of September 15, 2014, and he testified that he did not recall if there were any work orders that extended beyond that week.[26]

Based on the evidence presented at trial, Dow maintains that Gulf failed to prove by any testimony or documentary evidence that Gulf was authorized to work beyond September 15, 2014. Thus, Gulf failed to prove that Dow breached the Agreement.

Finally, Dow contends the jury's award of lost profits in the amount of $138,758.00 was unreasonable because Gulf failed to establish it had authorized work for the entire 90-day period, and Plaintiff's expert Michelle Avery presented a five-year average from the Dow contracts and extrapolated it to the 90-day term of the Agreement, rather than providing an opinion based on the actual work that was authorized or an average net profit from the preceding fiscal quarter.[27]

Gulf opposes Dow's motion and maintains that the evidence presented at trial supports a reasonable inference that Gulf was engaged in preauthorized work at the time of the termination. Gulf points to Kuhn's testimony that Gulf had been assigned work that was incomplete at the time Gulf left,[28] and Gulf also points to Kuhn's testimony that she understood that Gulf would remain working at Dow's facility during the 90-day period "in some capacity."[29] Further, Dow's Maintenance Leader Chad Naquin testified that he

---

[26] Rec. Doc. No. 153-2 at 231.
[27] Rec. Doc. No. 153-1 at 19 (citing Rec. Doc. No. 153-5 at 47-48).
[28] Rec. Doc. No. 153-3 at 8.
[29] *Id.* at 6, lines 15-17.
Document Number: 51136

anticipated Gulf would continue to work through the facility's next turnaround, in September of October 2014, which would have occurred during the 90-day period.[30]

Gulf also refers to the trial testimony of James Watkins, Dow's Contractor Operations Leader, that it was his understanding that the contract between Gulf and Dow could only be terminated at the end of the 90-day period: "I am not an expert of the law, but my understanding is the termination of the contract will take place in 90 days."[31] Dow's Contract Administrator, Jeff Normington ("Normington"), testified that Dow continued to work by using Gulf's employees after Gulf's management was removed.[32] Gulf also contends Troy Barbier ("Barbier"), Dow's Sourcing Manager, understood the termination provision to work in each party's favor, *i.e.*, if Dow could obligate Gulf to continue providing services during the 90-day period, then Gulf could obligate Dow to continue authorizing work until the end of the 90-day period.[33]

Thus, based on the testimony presented by both Gulf and Dow employees, Gulf contends the jury could reasonably infer from the evidence at trial that the authorized work would have continued to be given to Gulf by Dow throughout the 90-day period. Gulf also maintains that evidence was presented at trial to support a reasonable inference that Dow prevented Gulf from completing its authorized work prior to the 90-day period. Gulf contends Barbier admitted that Dow was preparing a backup plan to replace Gulf in August 2014, weeks before Dow sent the termination letter on September 15, 2014.[34]

---

[30] *Id.* at 21.
[31] *Id.* at 71, lines 23-24.
[32] *Id.* at 52-54.
[33] Rec. Doc. No. 161 at 3 (citing Rec. Doc. No. 153-3 at 115-116).
[34] Rec. Doc. No. 153-3 at 102.
Document Number: 51136

Barbier admitted its transition timeline was becoming "crunched" prior to the turnaround.[35] Gulf contends Barbier also testified regarding internal Dow emails wherein it is indicated that Dow hoped to resolve the Gulf "distraction" before the turnaround.[36] Gulf notes that Barbier was unable to explain an email in which Kuhn asked for a replacement contractor for Gulf "LAST MONTH."[37]

Gulf also argues that the trial evidence demonstrated that, once the 90-day termination letter was issued to Gulf, Normington testified that Kuhn immediately met with Gulf's nested employees at the Dow facility, without the knowledge or presence of Gulf's principals, and before any Gulf representatives had an opportunity to attend the meeting or discuss the termination with its own employees.[38] Gulf maintains that,

> [g]iven the difficulty in replacing inspection personnel for Dow and Turner, to which Dow has admitted, given the sudden acceleration of Dow's decision to replace Gulf, and given the surreptitious nature of Kuhn's meeting with Gulf's employees without Gulf management's knowledge, a reasonable inference can be drawn that Gulf did not leave of its own accord, and that Dow ordered the premature departure of Gulf.[39]

Gulf also contends that reasonable minds could conclude that Gulf sustained lost profits commensurate with the amount awarded based on the testimony of Gulf's expert accountant, Michelle Avery, that she estimated lost profits during the period based on a per diem loss.

## IV. ANALYSIS

Based on the evidence presented at trial, the Court finds that Dow's motion should

---

[35] *Id.* at 104, line 20.
[36] *Id.* at 106, line 6.
[37] *Id.* at 109-110.
[38] *Id.* at 48-52.
[39] Rec. Doc. No. 161 at 6.
Document Number: 51136

be denied. Although the Court agrees that Plaintiff's evidence in this case was weak, for purposes of this Rule 50(b) motion, the Court must construe all credibility determinations in the light most favorable to Gulf. When the Court considers all the evidence and resolves all inferences and credibility determinations in favor of Gulf, the Court concludes that the facts and inferences on liability do not point so strongly and overwhelmingly in Dow's favor such that reasonable jurors could not have reached a contrary conclusion.

The Court finds that the jury was presented with testimony from which it could reasonably infer and conclude that Dow breached the Agreement with Gulf. As set forth above, Kuhn testified that Dow had assigned Gulf work that was left incomplete, and there was an expectation that Gulf would remain working at Dow's facility during the 90-day period, in some capacity. Dow claims Kuhn's testimony is not evidence that Gulf had authorized work beyond September 15, 2014; however, Kuhn did not qualify her statement to this narrow time frame. The jury was free to draw the inference from Kuhn's testimony, and the Court finds that it was not an unreasonable inference, that there would be authorized work for Gulf during the 90-day period.

While Massimini acknowledged that Gulf made the decision to terminate its employees the day after Dow provided termination notice, Gulf also presented testimony sufficient to support a reasonable inference that Dow had been planning to replace Gulf for several weeks prior to the termination notice. Dow management employees also admitted to meeting with Gulf's employees regarding the turnaround without the knowledge or presence of Gulf's principals and ostensibly before any Gulf representatives had an opportunity to attend the meeting or discuss the termination with its own employees.

The Court agrees that counsel for Gulf has mischaracterized and misinterpreted some of the testimony he claims supports the jury's verdict in this case. Specifically, Gulf's arguments do not accurately reflect the portions of Barbier's testimony cited by Gulf;[40] further, Barbier is not a lawyer, and his "understanding" of purported reciprocal obligations in the contract is not evidence of same.

Nevertheless, sufficient evidence was presented at trial to support the inferences drawn by the jury such that Dow has not carried its heavy burden on this motion. The instant case turned in large part on the credibility of witnesses. The Court cannot substitute its own or Dow's reasonable factual inferences for the jury's reasonable factual inferences, even if the Court considers its own more reasonable.[41] Indeed, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.[42]

Further, regarding the estimation of lost profits explained by Michelle Avery, the jury was instructed that they were not required to accept her opinion and could decide whether to accept or reject such testimony.[43] Dow cross-examined Avery extensively on how she reached her calculations, and Dow argued its position to the jury in closing.[44] Clearly, the jury accepted Avery's testimony and, based on all the testimony and evidence

---

[40] Gulf claims Barbier "admitted that ... under the ... Agreement for Services ..., either party could **obligate** the other to maintain the working relationship during the 90-day 'no cause' termination period." (emphasis in original). This does not accurately reflect Barbier's testimony. It is likewise disingenuous to argue that Barbier "conceded that the provision provided the same rights in reverse, i.e., that Gulf could obligate Dow to continue authorizing work until the end of the 90-day provision." Further, this argument runs contrary to the prior ruling of this Court in Rec. Doc. No. 84.
[41] Redding v. Hilti Corp., 1995 WL 144611 at *4 (E.D. La. Mar. 30, 1995)(citing Rideau v. Parkem Indus. Services, Inc., 917 F.2d 892, 897 (5th Cir.1990)).
[42] Id. (citing Boeing v. Shipman, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc )).
[43] Fifth Circuit Pattern Jury Instructions (Civil Cases), § 3.5 Expert Witnesses.
[44] Rec. Doc. No. 153-5 at 121-129.
Document Number: 51136

submitted at trial, reached the award of damages for lost profits in the amount of $138,758.00. The Court finds that such an award is not unreasonable in light of all evidence presented at trial.

## V. CONCLUSION

For the reasons set forth above, Dow's *Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b)*[45] is hereby DENIED. Judgment has previously been entered in this case.[46]

**IT IS SO ORDERED.**

Baton Rouge, Louisiana this 24 day of April, 2019.

*[signature]*
CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
**MIDDLE DISTRICT OF LOUISIANA**

---

[45] Rec. Doc. No. 153.
[46] Rec. Doc. No. 146.
Document Number: 51136